The Illinois and Ellicott Federal Division is now in session. The Honorable Justice Raymond W. Mitchell is presiding.  Madam Clerk, can you call our first case? 1-22-0487, Weiss v. Retirement Board of Municipal Employees Annuity Benefit Fund of Chicago Okay, well counsel is going to argue both sides. If you just step up to the lectern and introduce yourselves for the record. So we have your names. Dave Heiss on behalf of the Plaintiff Appellant Kathleen Heiss. Okay, Mr. Heiss. Good morning, Your Honors. Vincent Pennelly, P.I.N. E.L.L.I. on behalf of the Defendant Retirement Board. Great. Well, as you know, we've read the briefs and we're familiar with the record and the authority cited therein. So you can certainly take that into consideration in your arguments. Undoubtedly, we will interrupt you with questions. We don't intend to be rude. We're just trying to make the most of our time together. We've allocated 20 minutes a side with an additional 5 minutes rebuttal for the appellant. And with that, the appellant, counsel of the appellant can be seated and Mr. Heiss whenever you're ready. Thank you, Your Honor. May it please the Court. This issue of this very appeal, Kathy's widow's annuity application, comes under the pension code. And what this entire appeal turns on is the definition of employee or participant as set forth by 40 ILCS 5-8-113. If, in fact, Kathy's deceased husband, Fred, was an employee or participant under the meaning of that statute, that resolves every other issue that's associated with the appeal. And what the administrative record before this Court tells us is that Fred was, in fact, an employee or participant as defined by the code. And both the administrative ruling and the lower court's ruling is in error. I'm going to stop you for a minute. As Justice Mitchell warned, we might. Isn't there a predicate legal question as to who has the authority to make that determination? Yes, there is. And do you disagree with the colleague's position that the only entity that has that authority is the board? The board does have the authority to make that determination, but they have to make that determination within the ambit of the pension code. I don't think anybody disagrees with that. They have to follow the pension code. But you do agree that they are the only entity that has that authority? I do agree with that, yes. Section 113, subsection C, specifies that any person employed by the board may be and is an employee or participant under the code. We know that Fred, as an attorney for the fund, was employed by the board. That was within the fund's discretion to determine that he was, in fact, an employee or participant. They have the ability to appoint such professionals, including in section 5-8-208 legal professionals, that are necessary to fund business and to fix their compensation. And the service that's required, as defined by section 5-11-114, is any employment for which a contributor is entitled to receive monetary or compensation from an employer. All of those fit within the fact that Fred is an employee based upon the record that we have here today. I'm going to stop you again. I mean, I was an employment lawyer for many years. There are endless decisions about whether people are or are not employees. And it's, just to put it bluntly, a lot harder than that. It's a lot more complicated. There's the manufactured IRS test. There's the test that the Illinois Supreme Court has used. So, saying that anybody who's employed, anybody who gets compensated by the fund is an employee, seems to me to be oversimplifying what I think is a very difficult, complicated, nuanced, perhaps sometimes subjective analysis. I don't mean to, I did not, certainly did not mean to oversimplify the analysis. The facts that we have, Your Honor, in the administrative record is all, not only suggest, but determine that Fred was, in fact, an employee under the statute. He was issued a W-2 for the 38 or 39 years that he was employed by the fund between 1983 and 2011. The fund admitted in its administrative ruling that Fred was, in fact, issued a W-2 consecutively for all of those years. We also see a longstanding practice of the fund employing professionals, legal and medical professionals, as employees in awarding them pensions. And what the record reflects is that fund attorneys John Beattie and Thomas Magoon, Michael Madigan as well, and a medical professional, Dr. Robert Conecco, all contributed, all were deemed under the statutes that we've talked about here, both in the briefs and today during the argument. All were identified and found to be an employee or participant under 8-113. Am I wrong, though, that the other lawyer that worked at the time that your client was working, or your client's husband was working, was not treated as an employee? That there was another lawyer simultaneously working for the fund who was not treated as an employee? I think it's a little bit more nuanced than that. You're referring to William Marovitz, who was ultimately paid contributions to the Laborers Fund, which is a separate fund, of course, from the Municipal Employees Annuity and Benefit Fund. Yes, his pension application was declined, I think. But he was also, if we can forget what the Laborers did, he was never given a pension by the Municipal Fund. Correct. His application was submitted. He was then brought up on charges by the Security and Exchange Commission. And I think it's important that we look at that, his pension denial, in the context of the insider trading. And I'm not even talking about his denial, but the fact that he did not get a pension from this fund. He did not get a pension from this fund, but he never applied to this fund. He was never a member of this fund. He was a member of a separate fund. And he never appealed the denial from the Laborers. I think he was probably… This is record-solid. The record-solid, I think he was probably battling with the SEC and not his pension, but to my knowledge, the record-solid that he did not appeal. In terms of the… What are we to make of this delay in your client's… Your client's husband never made an application… He completed an application in 2009, but never submitted it, right? He did not. That seemed to be something that figured prominently in the Board's determination. It's paragraph 3. They spent a lot of time talking about this. Was there a requirement that he submit that application? There is no requirement, Your Honor. And that's why the pension code and the enforcement of the pension code is so important here. And, of course, the pension code, to the extent it is construed, is to be construed in favor of those to be benefited, which is Kathy in this situation. The Fund's argument in its administrative ruling and throughout these proceedings is to impose or seek to impose requirements that are not provided in the pension code. There's nothing in the pension code that speaks as to the timing of when an individual is required to apply. How about the receipt of other benefits? The fact that Mr. Heiss never received other benefits from the Fund or his will. Is that of any legal significance? It's of no legal significance because the pension code... So Dr. Vonneko, did he maintain an office at the Fund when he collected his pension? I don't believe he did because I don't think the Fund office is set up to administer medical procedures, but I do think the record is silent on that. Almost every issue that the Fund takes in terms of the timing and the circumstances of Fred's employment is not provided in the code. It has nothing to do with whether he is an employee or a participant or not. Was Michael Madigan or McLoone or Vonneko, were they full-time employees of the Fund? They were not. James Beattie is another attorney. He absolutely maintained an office outside of the premises of the Fund, and I know that because he shared office space for a period of time with my father's friend. So I know that. That's not on the record. That is not on the record. But all of those individuals maintained a legal office outside of the actual physical presence of the Fund's office. Not only did Fred receive a W-2, but his salary was set by the Board in the annual budget each year. All of his duties were controlled and set forth by the Board of Trustees. And Justice Mnookin talked about the different tests that we have in terms of the independent versus employee test. One of the most significant factors, if not the most, under all of those tests, are does the employer have the right to control the work of the individual, or does the individual have a right to operate without that control, the former being an employee, the latter being an independent contractor. And what we see in the record is there are three different analyses that were undertaken. We see Mr. Stefanski, the former executive director's analysis in 2007. The Fund itself undertook an analysis in 2009, and that sought the guidance of the IRS. And in all three of those instances, not only did they find that, according to those tests, that Fred was an employee and not an independent contractor, the most positive factor is that the Fund acknowledged that they have the right and had the right to control Fred's work throughout the duration of his employment with them. Who submitted the information to the IRS? Then-Executive Director Terry Stefanski of the Fund on behalf of the Fund and on behalf of the Board of Directors. Do you know if anything would have prevented the Fund at that point from going to the Board and getting their sign-off back in 2009 when they did this investigation? I'm not sure how to answer that because I'm not sure the significance of a sign-off under the pension code, but I think that what the pension code does provide is that the Fund has the ability to retain legal professionals and the service that they perform within that statute constitutes and makes them an employee. So I don't know that they had to take an affirmative step, but I definitely know that the pension code does not require them to take an affirmative step. The Executive Director not only controlled all of Fred's activities, but dictated Fred's activities, regardless of the length of time that it would take. So Fred's W-2 salary did not increase if the complexity or length of a task took longer than anticipated. The analysis that we see in the record, as a Fund attorney, part of Fred's regular duties to attend, not only the monthly meetings with the Board, but other meetings that might occur, conduct administrative hearings, confer with other municipal employees when they required either legal advice or even non-legal advice concerning the administration of... Counsel, you're a lawyer. That's always true of lawyers, right? Your clients control what you do and how you do it. A client is always in control. Yes. It doesn't make you an employee of every client. It doesn't, but in this situation it does because of the way the pension code is defined. It's defined in a way that allows the pension fund here at the municipal to retain a legal professional to control his duties and to make him or her an employee or participant under the standard. What section of the pension code are you reliant on? 49 OCS 5-8-208 allows the fund to appoint such actuarial, medical, legal, clerical, or other employees as are necessary and fix their compensation. That's exactly what they did. That's different from the situation that I'm in as an outside counsel and all of us were in in private practice. We're not controlled by the pension code. The pension code here dictates that under that scenario, a legal professional, a doctor, and the other individuals, an actuarial professional would fix... So any actuary, anybody that the fund asks for help, basically you're saying is an employee by definition? No. Anyone that the fund retains and pays a W-2 salary and meets the test of an employee and not an independent contractor within the ambit of the pension code. So it's not just anyone they consult with. That's the difference. 50-208 uses the word employee, but that doesn't mean that everybody who's retained under that section is necessarily an employee for purposes of the pension code, does it? My guess is there are actuaries, for example, who do work for the pension fund that are not employees. I don't know. Perhaps opposing counsel knows, but my guess is. I'm not going to guess, but I think you've just identified an ambiguity. That would be construing Cathy's paper. If there's any uncertainty as to what employee means in this context, we know from the Taylor case, we know from all of the pension fund cases that have come out, that the statutes are to be liberally construed in favor of those benefited, and here that would be Cathy and not the fund. The IRS analysis, I think, is not only significant, but it confirms what the fund undertook as its analysis in that time frame as well. And the IRS, as a result of its analysis, not only advised Fred that he was an employee of the fund, but also advised the municipal fund itself. And I'm not suggesting that the IRS ruling is binding precedent. It pretty much said it's not. It absolutely said it's not, Your Honor. But in the ambit of this administrative record, the only independent contractor-slash-employee analyses that we have are from Mr. Stefanski in 2007, from the municipal fund itself in 2009, and from the IRS in 2009. That's Walker in the child court. I know. That's not in the IRS. Nor does the funds after administrative ruling independent contractor analysis in the lower court. And here, I'm not saying anything either. We know that the facts were constrained to the facts that are in the administrative record, and that's the only analysis that we have before us. I think the most... So, after the director, Stefanski, after he saw the opinion of the IRS, obtained the opinion of the IRS, and then they, sometime thereafter, gave Mr. Hess an ID, gave him a number, signed him a number, and then someone from the board identified, someone from the agency, gave him a number that he needed to contribute to buy into the fund. Is that correct? Is there anything intervening between the first request, interagency kind of analysis, and then IRS? Was there something else that occurred that led them to believe that, yes, we are safe in issuing a number, making him a participant, and then determining what amount of money he needs to pay in to bring him current? There was no intermediate or intervening agency action. What we see in the record is that pages 181 through 183, Executive Director Stefanski, Tess Toledo, and Eileen Pecora, all discussed in an email communication between each other after the IRS ruling how to establish Fred as a member into the fund. As Your Honor pointed out, not only did the fund assign him a membership number, but it directed Fred and gave him detailed instructions on how to pay over $128,000 in pension contributions as a result of those rulings. And every position that the fund takes has to be reflected in light of those actions. What could possibly be the explanation to tell Fred, here are your pension calculations. If you pay $128,000, you will have pension eligibility. If they didn't believe he was an employee. Okay, I'm going to stop you again for one second. I don't have 208 in front of me, but I do have 58197 in front of me, and it says, the poor shall have the duties and powers stated in sections 8198 through 8209. So it sounds like 208 is a board power, not a fund power. Certainly, the board here... So the board is the one who has the authority to appoint attorneys and fix compensation, not the fund. Yes, but that's been done here, and that's what the record establishes. The board, I assume, approved in some way or other the hiring of Mr. Heiss, I'm sorry. But they never approved giving him a pension. Until they were finally asked, and then they said no. I'm just, I'm a little confused, and I think it's not... I think the statute is a little confusing as to where the powers of the staff end and the powers of the board begin. But my 208 is specifically a power of the board. So if you're relying on 208, I don't see how that gets you around the fact that this has to be a decision of the board. And if the board says no, it's a nullity. It's not as simple as the board saying no. The board cannot say no while ignoring the pension code. Yes, I understand that the board... So first off, I believe the section you're referring to is 40 ILCS 5-8-196, which requires the board to meet... No, I'm talking about 197. The board shall have the powers and duties stated in sections 198 through 209. 208 falls within there. So 8208 is a power of the board, not of the fund, not of the staff. Certainly, but we're not talking about the staff in isolation. Mr. Stefanski was a member of the board. What the board's job was... Mr. Stefanski was a member of the board? Yes. But he could not act for the board. He was not a majority of the board. Correct. Okay. When Kathy applied her application, that current constitution of the board was required in accordance with the pension code to determine whether, in fact, Fred was an employee or a participant. What we've seen in their briefs... I'm sorry. So that board, in 2009, approved the pension? Is that what you're saying? There's an approval by the board in 2009? I believe they approved it in 2009, but I'm talking about in 2019. When Kathy submitted her application, I believe what happened in 2009 is sufficient. But if the board had to take affirmative action in 2019, when Kathy applied, and in 2020, when the actual hearing was conducted, they are required to formulate their decision in accordance with the pension code. And the administrative record that we have leads us to only one conclusion, that Fred was, in fact, an employee. There is no... They didn't undertake any independent contractor analysis. So all the tests you've referred to, you're not... I get that. I get that argument. I think that's really... I completely understand your argument that their analysis didn't look at the right factors, that if you look at the right factors that the IRS did, as the fund did, you come out the other way. I get that argument. What I don't get is what authority the staff had, without the board's approval, to do anything. That's the part I'm really confused by. Mr. Stefanski worked, acting on behalf of the board, gave those instructions. There's evidence in the record that the board met and was advised by Mr. Stefanski that Fred had, in fact, constituted an employee based upon the IRS application. But there's an actual meeting with the board where there's some approval or some notification? No, I said he advised the board. Then where is that in the record, that he advised the board? Or in the brief? I mean, I'll find it. If it's in your brief, we'll find it. But that's enormously used to me. It's in our... Okay. What the fund does in its argument, it applies all significance, and I will argue undue significance, on the requirement of what steps the board needed to take in 2020. The board cannot take a step that's contrary to the pension code. And that's what the board did. The board ignored... We believe this issue is illegal, is a purely legal issue under de novo review. But if we look at the factual findings the board made, they're against the manifest weight of the evidence as well. Okay, I think you're down to your final minute. The fund... Every argument the fund advances, including the part-time requirement, is not set forth in the pension code. One of the fund's most emphatic points below and in its brief is that Fred was considered a part-time employee. What we know is not only is there no full-time requirement because Section... Let me ask you this question. If we were to agree with you that the analysis of the board was deficient, what's the appropriate remedy? Should we remand it for the board to consider the correct factors? No, I don't think that's the remedy. I think the board had the available information to consider, and they made a mistake. And I think it's within the power of the court and the requirement of the court to reverse the decision because it's not only legally insufficient but factually insufficient, and award Kathy her widow's annuity. The issue of the part-time employee, not only is that not provided, in fact, in Section 113, in Sections J and K, full-time employment is required for employees of CHA and the Public Housing Commission. The statute is silent, which means the legislature had the power to impose that requirement and did not. From a practical point of view, we know that's not the case because every alderman in the city of Chicago is considered a part-time employee, and many, if not all, aldermen are in the municipal fund. So any argument that the fund makes concerning a part-time requirement or any requirement that's not in the pension code is contrary to the code and warrants in favor of Kathy's, of the lower court and the administrative fund being overruled in Kathy's application for annuity being granted. Thank you, Mr. Nelson. Mr. Fidele, whenever you're ready. May it please the court, counsel, good morning, your honors. As you know, I'm representing the Defendant Retirement Board of the Municipal Employees Annuity and Benefit Fund. And may I ask the court, do you mind if I use a timer here on my phone? Well, it just helps me stay on track. So first, before I get into my argument, let me clarify something for the record that's very important. Counsel said the executive director, Mr. Savansky, is a member of the board. He is not. The statute is very clear that there are five appointed members to this board. And this court, I'm sure, is well aware from other pension funds that it's the code that appoints who the board members are. Mr. Savansky is simply an executive director. He does work for the board, but he is not the board. He doesn't vote on issues. He's an agent, right? He's an agent. He's an agent, yes. But he doesn't vote. He never votes on your board issues. But what is his opinion as to whether an employee is an employee or an independent contractor? It is a form of that. Well, it would be binding. But he's the executive director. Who's in a better position to know whether somebody's an employee or not? I would agree with you, Judge, that he had an opinion, and an opinion is just that. It's an opinion. It's based on what he thinks and the factors he considered. But an opinion is not binding. He can present an opinion. He can express his opinion. But as has been pointed out, the board was never given an opportunity to weigh the opinion against any other evidence here because it was never brought to the board. Well, it was in 2019, wasn't it? No, I don't think it was, Judge. I think all that happened in 20—I'm sorry, 2019. Right, or 2020. I mean, what are we doing here if the board never— Well, this board did when it was finally faced with the issue that arose because of the application by Mr. Heiss. Right. That's the first time that the board was placed in a position to evaluate whether or not Mr. Heiss— Are you suggesting that the lapse of time constitutes some sort of bar to considering the application? Not at all, Judge. All I'm saying is that the plaintiff relies on activity in 2009. You've heard the responses to the court. He agrees, first of all, that only the board can make this determination. He doesn't dispute that. But secondly and importantly, he's relying on activity in 2009 that he says is the board's approval, that being the IRS determination and the fact that Mr. Heiss paid some contributions to the fund. So that activity in 2009 is what he is saying amounts to board approval. So you're saying the first time the board actually looked at it, they said no. I mean, this was 2020. They looked at it and said, no, you're not entitled. That's the first time the board looked at it. That's exactly right. But my question to you, and I didn't appreciate this until your opposing counsel and Justice Mitchell pointed it out, there is this memo in 2007 from Mr. Stefanski to the board laying all this out. Do we know what happened from the record to that? No. There was a 2007 Exhibit D before the board that says, trustees, here's all the reasons I think that Mr. Heiss should be an employee. We don't, Judge. We don't know if that memo ever surfaced to the board level. Mr. Stefanski may have prepared it and it was in his file and in the records of the fund, but there's no evidence that it was ever then presented to the board. And certainly there's a complete absence of evidence that the board considered it, and then a majority of the board said, yes, we agree with Mr. Stefanski's analysis and opinion. Counsel, are you suggesting that Mr. Heiss was employed there as the attorney for the board from 2009 to 2019 and that no one on the board was aware that he had become a member of the fund? I can't answer for the board. I'm not suggesting that, Judge. But what I do know is that how these funds operate, their staff, there's an executive director. They do the day-to-day work. And they make reports. They make reports. They report memberships and what's going on and so forth and so on. Now, whether the board, as a general matter, when it's conducting its business, it's not micromanaging every day what is happening here. When issues come before the board at regularly scheduled board meetings, which occur monthly, that agendas are prepared, evidence is presented, memos, whatever the issue is is presented to the board for it to take formal action. And a report, an opinion from IRS that created tax indebtedness or requirements upon the employer, if he was an employee, that would not be something that would rise up to the level of a regular board meeting discussion. I don't think it would have. If the issue of whether or not Mr. Heist was an employee for purposes of being a participant in the fund and then earning a pension, then it may have surfaced. But without that triggering event coming before the board for that, it's just something that happened at the fund level. Isn't your opinion that everything that happened in 2009, everything that happened in 2009, all of that is irrelevant, has no real consequence, doesn't need to be weighed by this board in any way? It's my opinion, my position, and your position, that the events occurred, we're not disputing they happened, the IRS, the actions that were taken, but they never rose to the level of the board taking official action. So they didn't vote? No evidence of a vote. Not only did they not vote, there's no evidence that they were asked to consider it, to actually look at it and say, okay, what's the issue and what are we doing with this? There's no evidence in this record. And by the way, I think Justice Mikva asked, was there anything preventing Mr. Heist from bringing this to the board? And I don't think the answer was given to that question, which is no, absolutely not. Mr. Heist, or someone on his behalf, could have easily made an application to the board. But there was no requirement that he do it. So we're talking about the legal significance of the non-occurrence of a non-required action. Well, that's sort of the whole thing here, is that none of this ever rose to the level of the board. So all we can do is speculate on what would have happened if they had considered it. But we do know it never made it to the board. Does it ever go to the board where somebody changes status or some group of employees change status? These people were not participants, now they're going to be participants. Board, can you approve? Does that ever happen? Yes, you have deductions and omissions. You have, if benefits were paid in error, if somebody withdraws from the fund, their status changes. In any way, all those have to come before the board. They're spread of record, and the board votes on them and has to approve them. So these types of issues rise to the board level all the time. And here, because Mr. Heist decided not to apply in 2011 when he withdrew, and I'm not criticizing him for doing that. I'm just saying he didn't. And so he never applied, so that issue never surfaced to the board. But he did make a significant contribution, and there were deductions for the pension then taken from his paycheck. That's true. But people, members, participants, many times contribute to the fund, and for different reasons. There's a myriad of reasons. Under the code, they may seek to withdraw. There may be a change in circumstance. There could be a pension forfeiture issue. I mean, there's a lot of reasons that they're not eligible. They don't meet the eligibility for the benefit, and therefore, they have to withdraw because of those circumstances. And here, him being an employee is an eligibility requirement. If he's not an employee, then Mrs. Heist is not entitled to a survivor's annuity. Going back to Justice Mitchell's question to your opposing counsel, if we agree that the analysis here done by the board failed to consider things that perhaps should have been considered, including perhaps the analysis of the IRS, et cetera, et cetera, is the proper result to reverse or to remand, and why? Well, I'd say it would not require a remand because the robberman, or I would say the linchpin of the board's decision at this time, was that there was never an action taken in 2009 by the board to approve him as a member. But you agreed that there was no legal bars in making an application later. No. Yes, I do agree with that, Your Honor, but all I'm saying is that this board... Are you saying that but for the absence of a vote in 2009, he otherwise qualifies as an employee? No, I'm not saying that. I'm saying this board, for the first time, looked at this in 2019, 2020, when it made this decision. But that's a reviewable decision, counsel, that we can review and say it's clearly erroneous and reverse it. Or we can review and say, hey, it's not done very well. Do it again. We can do... It's not an unreviewable decision by the board. You're not saying that, are you? No, I'm not saying that, but you can also, for among any grounds in the record, you're a reviewing court. If you looked at these factors significantly, the IRS and the circuit court both looked at all the factors in great depth, as we did in our briefs, and I'm not going to spend time on it, but everybody looked at all these factors. And what did the IRS say? They said, there's factors going both ways on this, and... There's always factors, Justice McPherson. These are tough cases. That's true. And they also said, which is also true, that it's the rate to be given, and no one factor outweighs the other. That's what the IRS says. So whose job was it to weigh factors in this case? It was the board's job to do that. They weighed the factors. They made the decision. Now, if you think, well, they didn't weigh all the factors, or maybe they didn't mention some factors in the record, you have the record. You have the facts and circumstances. You can make that determination without remanding it to them. Don't remand. Just reverse out if we have a problem. No, no, no. Well, I don't think you should have a problem. But you say we could do what the circuit court did, weigh the factors ourselves and say, yeah, it comes out this way. Is that what you're suggesting? That's substantially what I am saying. Thank you. Justice Walker, I'll appreciate it. Judge Walker. Well, you know, Judge Walker, I thought, did a very thorough job, and he really went in... Where? Very thorough, perhaps, in the board. Just saying. Well, you know, he's a reviewing court, so he went ahead and did the analysis. And, of course, we don't review his decision, right? We review the board's decision. That's absolutely right. However, you know, by extension, I think he, you know, his analysis should give you some comfort that somebody looked at these factors, and, you know, there's enough there that the board is the one to make the determination. And this board said they didn't. And, you know, it's interesting that, you know, the court brought up the laborer's decision with Mr. Maravetz, and there's discussion in the brief about that, that it was a one-sentence denial or whatever, and it wasn't appealed. So it's just, you know, circumstantially interesting that Mr. Maravetz, who, you know, we can't ignore the fact that Mr. Maravetz and Mr. Heitz were both working for both funds, doing all this, and then wanted to see if they could become members of the funds. So they did what they did, but Mr. Maravetz was denied by the laborer's fund. Mr. Heitz didn't even apply to the municipal fund. So, you know, what's the inference to be drawn? I don't know. I don't think any of this is true. Tell me. What is the inference to be drawn? I don't know. This is a word on psychoanalysis. Well, I think logic and common sense would at least give rise to the thought that, well, Mr. Heitz understood that, well, Mr. Maravetz tried. It didn't work. And I'm essentially in the same position as he was, but only with the municipal fund. So, therefore, I'm not going to apply. What happened to other people? I mean, we have Dr. VanEcko. We have Mr. Madigan. We have Mr. McLuhan, right? These are all folks who did qualify for PEM, did receive PEM. Well, I don't think, you know, that's determinative for this Court. What's happened in the past? I mean, pension funds can make or receive. That's why I don't really care about what happened to Mr. Maravetz. So, I agree. I agree it's not determinative here, Judge. It's just kind of the interesting facts in this record. And just my few remaining points, I think it's, you know, significant that the IRS determination, as this Court already pointed out, said it's not binding. Not only is it not binding on the Court, but we don't, we can't verify the accuracy of the information that we were given. They're not going to stand behind it. And it's, they admitted that they were not in a position to judge the validity of the information. So, the IRS, that's all in their opinion. They disclaim all of that. Just a second on that, just so I'm clear. So, he was already being treated as an employee for IRS purposes to the extent that deductions, he was a W-2 employee and deductions were being made? What? Is that right? I'm not, well, those deductions were being made. I'm not going to go so far as to say he was being treated as an employee. But that's what the IRS generally cares about with employees, are deductions being made. Sure, but there's periods of time, and you go back in the record and see where deductions were not being made. Okay. Earlier in the time frame. Remember, he's working there from 1983 all the way on. 2011, is that when he was? 2011, when he retired. So, he's there for almost 30 years. And if you look at the record, there's periods of time where he's had no earnings for MEABF. There's periods of time where they're not taking out any taxes. So, again, you know, you've got these factors that are going all over the place, back and forth. Just briefly on the cases, I just wanted to make a couple of points. I'm a stand-in review. Of course, we have a dispute. I don't know if the court needs me to say it, but this case is either manifestly, which I think the court was correct on that, the circuit court, or, you know, is it clearly convincing evidence. It is not the noble review, though, because there's a factual underpinning here as to whether or not he was an employee. I just don't get how you ignore that and say that's just a question of law, given the statute here. And in particular, on Section 208, to the court's position, that section is very important because it says, the board may hire by employee or contract, even if the conjunctive is used. That implies that the legislature understood you could do it as an independent contractor or as an employee. So they gave that latitude to the board. And it's important that, you know, the fund has actuaries. The fund has professional investment managers. The fund has accountants. It has all legal services, all these different types of professional services. And to accept the premise argument, then they're all employees, which is just not the case. And, again, my last point would be that, with respect, when you look at the annual budgets, for every year, Mr. Heiss and Mr. Marovitz, for their legal services, and there was another lawyer in there, too, I think, who was a lobbyist, they're all treated differently. They're not in salaries with employees. They're all under professional services. So I think the indicia there is very clear that the board was not treating them as employees. They were treating them as independent contractors. The Coleman case, I think, is much closer and used closer to our facts than the Taylor case. And I see my time is pretty close up, so I think I'll finish with that. We respectfully ask the court to affirm the decision of the board. Thank you. Thank you, Your Honor. You have five minutes. Thank you. Contrary to counsel's remarks, there is no evidence in the record that there was a period of time in which deductions were not taken from Fred Zell. All of the W-2s that are in the record establish that there were deductions taken. And the fund's own administrative ruling acknowledges that he was issued a W-2 in all years of his employment. Was that before or after the IRS determination? That was before. Since 1983, through not only through the IRS determination in 2009, but through the remainder of his employment in 2011, he always received a W-2 form. Counsel's focus or his narrow focus on Section 208 is misplaced. Yes, it does say by contract or employment. Certainly a salaried employee can have an employment contract. The issue there is not whether it's a contract or not. The issue is how is the employee treated. Counsel's example of an actuary. If that actuary or firm is paid on an invoice basis and there are no deductions made and they don't meet the test of an employee as opposed to an independent contractor, then of course they're not an employee. But it's not as simple as his extremely narrow focus on the contract. But even if his interpretation does carry some weight, again, at best we have an ambiguity that needs to be construed in Kathy's favor. He talked about the contributions. The fund has always tried to minimize the contributions. We would submit that $128,000 in contributions don't amount to some contributions. It's an extremely significant step that the fund cannot explain if he wasn't actually a member. But he then went on to be very vague about pension forfeiture. Let's be very clear. The only time pension forfeiture arises is when an employee commits a felony in the course of his employment. Every case that both parties have cited, the Catalina case, there's other cases in our briefs, that's when pension forfeiture results. It does not result from an individual who was considered to be an employee, who had taxes withheld, who was treated as an employee, who met the factors, and then just because of the whim of the board was found not to be. Justice Mitchell had an interesting conversation with counsel about the difference between 2009 and 2019. The only difference between those two years is the administrative record existed the same in 2009 as it did in 2019. There's no additional evidence that they introduced other than the analyses that we've talked about, the 2007, the 2009, and the 2009 IRS analysis. The fund has always placed undue emphasis on the administerial act of taking a vote. That vote cannot be taken in a manner contrary to the pension code. So the fact that the vote didn't occur until 2020 has no legal significance. When we see that they ignored the entire administrative record, all of the evidence that they have cited, none of it's in the record. There's no time requirements. There's no requirements that Fred maintain an office at the firm or that he have vacation days. None of that's in the code. The vote has to be in a – yes, there has to be a vote. The vote has to be in accordance with the statute. Now, we disagree that Mr. Stefanski is not a member of the board. I think the record is silent on that. What I also – what we also disagree with, and we're in line with the Village of Oak Park case, is we don't believe the board consists of five members, and I think the record's silent on that. We believe the board consists of nine members. And for the same reason in the Village of Oak Park, Section 208 was found – an analogous comparison to Section 208 was found to be ambiguous in the Village of Oak Park case. It's similarly ambiguous here. It's whether a majority – it speaks to a majority of the board. Is that a majority of the board in attendance, or is that a majority of the entire board? The record's silent on that. And for the reasons that the analogous statute in the Village of Oak Park case was found to be ambiguous, Section 8-196 should be ambiguous here in construing Cathy's favor. And as to the case law, counsel referred to Cloman. Cloman was decided entirely because the applicant was an independent contractor. The more on-point cases, Billick involved an outside attorney who – it was acknowledged that he was entitled to a pension for the time that he was a W-2 salary employee. The issue was prior to that time when he was an independent contractor. And for those reasons, we ask that you reverse the administrative ruling and the lower court's ruling and grant Cathy the widow's annuity to which she is rightfully entitled. Thank you. Thank you to counsel for both sides for a fine argument today. Very helpful. And then to take another advisement, we'll have a third in this position in due course. The court stands adjourned.